Present — Van Brunt, P. J., O'Brien and Parker, JJ.

Judgment affirmed, with costs.

In the Matter of the Judicial Settlement of the Accounts of David B. Johnston and Another, as Administrators, etc., of Archibald Johnston.

William T. A. Hart, Administrator, Appellant; Hugh Langan and Another, Creditors, Respondents.

*When an administrator need not bring an action — when he should withdraw property offered for sale at a public auction.*

Although it may be the duty of an administrator to bring an action, yet, if it can be shown that in such action he would not have prevailed, it would be extending the liability of an administrator beyond that fixed by law to hold him responsible for not having brought a suit which he could not have successfully maintained.

When an interest in a lease of the value of $1,500 is offered for sale at public auction by the administrator of an estate, and the highest bid received therefor is $110, it is the duty of the administrator to stop the sale, withdraw the property, and make an effort to dispose of it at private sale, or to protect himself by applying to the surrogate for instructions.

Appeal by William T. A. Hart individually and as administrator of the estate of Archibald Johnston, deceased, from portions of the decree of the surrogate of the county of New York, entered in the office of. the clerk of the New York County Surrogate's Court on the 29th day of July, 1893, judicially settling his accounts as such administrator, and also from portions of the intermediate decree made by said surrogate, and entered in the said clerk's office on the 21st day of June, 1893, modifying, and confirming as modified, the report of a referee.

The opinion of the referee was as follows:

" It has been seriously contended by the contesting creditors that

Mr. Hart had no beneficial interest in the Garvey lease, but that he was a mere surety for Johnston. I cannot yield to this view. I think it clear that Hart and Johnston took the lease in the ordinary way, and that the burdens and benefits were shared by them equally. This is shown by their dealings with each other, and with the lessor,. in the reconstruction of the buildings upon the leased property, and by the declarations of Johnston in his assignment to Enscoe, and in his assignment to Ezekiel Harris. Being convinced, from the whole case, that this view is correct, I cannot found an argument upon certain loose and unconsidered expressions in Hart's testimony, to· deprive him of his one-half of the lease.

"In regard to the assignment of one-eighth of the lease by Johnston to Ezekiel Harris, and by Harris to Mrs. Johnston, I should, of course, be bound by the opinion of the General Term, were it not that new testimony presented on the trial before me shows that Hart was informed by Mrs. Johnston that she had paid two thousand dollars for the interest so assigned to her. A repetition of this statement of Mrs. Johnston's by Hart to his counsel elicited the opinion that under the circumstances it was not the administrator's· duty to endeavor to set aside the Harris and Johnston assignments. There is besides some testimony to the effect that soon after the Garvey lease was executed and while the rebuilding by the lessees was going on, moneys belonging to Mrs. Johnston were loaned by her to her husband. Without, however, giving great weight to this· evidence, I am satisfied to rest my decision upon the ground above stated, viz., that the counsel for the administrator advised him to bring no action after Mrs. Johnston had declared that she paid value for the assignment.

"The sale by the administrator of the one-eighth interest in the· lease to James Kenney remains to be considered.

"This transaction occurred directly after the purchase by Mr. Hart in his own right of a similar interest from Mrs. Johnston for· $1,500. Presumably he paid no more than it was worth. We must, therefore, fix the value of one-eighth of the lease at $1,500. The· administrator advertised the sale to take place on the 20th February, 1888. The sale did not take place on that day, but for some reason that does not appear, was postponed until February 27. There is no evidence that the adjournment was advertised. On the·

27th of February the one-eighth interest is sold to Kenney, in his absence, Mr. Hart being present directing the sale in person, and Mr. Merritt, Mr. Hart's attorney, being also present, and bidding for Kenney. The price at which it was sold was $110. Kenney, who was an acquaintance of Hart's, holding continuous business relations with him, paid the administrator the consideration by an allowance in some unexplained way, of that amount in their mutual dealings.

" On the day of the sale the two assignments, the one from Theodosia H. Johnston to Hart, of her one-eighth interest in the lease, with the expressed consideration of $1,500, and the other from Hart, administrator, to Kenney, of a similar interest, with an expressed consideration of $110, were recorded. This transaction cannot stand. It was the clear duty of the administrator, when he found he could get no better bid than $110, to stop the sale, withdraw the property, and make an effort to dispose of it at private sale, or to protect himself by an application for instructions to the surrogate.

" He cannot shield himself by a plea of ignorance, for he, better than any one else, knew what the thing he sold was worth; he cannot shield himself by alleging that he was obliged to act without advice and hastily, for his counsel was present; and finally, he cannot shield himself under the advice of counsel, for if he had stated his dilemma to his counsel he would have been advised that such a bid was altogether inadequate, and consequently that the sale was improper.

" If he did consult his counsel, he was unquestionably so advised. The conclusion reached by me that the sale to Kenney was improper is strengthened by the subsequent transactions of Hart in regard to the leasehold.

" Directly after the sale to Kenney, and on the 5th day of March, 1888, he brought an action against Neal and Kenney for a partition and sale of the leasehold. The action was carried to a decree and sale. At the sale the premises were bought by Neal, who subsequently assigned his bid to Hart. When the referee conveyed to Hart the leasehold premises, Hart produced and delivered Kenney's receipt, and his, Hart's, own cheque to the order of the referee for the amount of Kenney's interest in the proceeds of the sale.

" The referee indorsed this cheque payable to the order of Kenney and returned it to Hart. Hart then procured Kenney's indorsement and canceled the cheque.

" It is in evidence that the cheque was never deposited by Kenney or collected through the bank or paid by the bank on which it was drawn. It was a mere memorandum cheque, and as it is clear that Kenney's share of the proceeds of the sale did not pass from Hart to Kenney through the medium of the cheque, it was, I think, incumbent upon Hart to show how otherwise the money reached Kenney. This he has failed to do, and I am forced to the conclusion by the facts, as I have detailed them, that the purchase by Kenney through Merritt, at the sale of February 27, 1888, was made at the request of Hart and for his benefit."

*George L. Terry*, for the appellant.

*William C. Reddy*, for the respondents.

O'Brien, J. :

It appears that on February 24, 1886, Archibald Johnston, deceased, was the owner of a two-eighths interest in a leasehold, and that on that day he assigned to his wife, through one Harris as an intermediary, one-half of his interest, being one-eighth of the leasehold. He died August 31, 1887, and in February, 1888, the other one-eighth was sold by the administrators to one James Kenney, for the consideration of $110.

With respect to this sale to Kenney, the referee held that it was improvidently made, and in violation of their duty as administrators, and that the administrator Hart should be personally charged with the value thereof, with interest. With respect to the assignment by the intestate to Harris, and by Harris to Mrs. Johnston, the referee held that it was for a valuable consideration and valid. The surrogate confirmed so much of the report of the referee as held the administrator Hart chargeable with the value of the leasehold interest sold to Kenney, and also charged him with the costs, and refused to allow the administrators any commissions; and in the conclusion thus reached we concur, for the reasons which are clearly set forth in the opinion of the referee, and in the interlocutory and final decrees of the surrogate.

This leaves us to a consideration as to whether the view of the referee or that of the surrogate should prevail respecting the one-eighth interest assigned to Harris, and by Harris to Mrs. Johnston, and by the latter, for a valuable consideration, assigned to the administrator Hart individually.

Upon a former appeal it appeared that Johnston for years prior to his decease was insolvent, and that the administrators had knowledge of his insolvency. It further appeared that in 1886 he conveyed to one Harris one-eighth interest in the leasehold estate, which Harris upon the same day conveyed to the wife of said Johnston, and that the consideration expressed in such assignments was alike, viz., the nominal sum of one dollar. Upon these facts appearing, it was held that it was the duty of the administrators to take legal proceedings to recover the property upon the ground that it had been disposed of in fraud of the creditors of the intestate, and that they having refused to do so, it was error in the Surrogate's Court to discharge them as administrators (*Matter of Hart*, 60 Hun, 516).

Upon this new proceeding before the referee additional evidence was offered tending to show that, although the nominal consideration of one dollar was expressed in the assignment, Mrs. Johnston paid her husband $2,000 out of moneys which she stated she had obtained upon a mortgage of $8,000 on property owned by her. That $2,000, by check of the person from whom the loan was obtained, she gave to her husband, subsequently receiving the assignment in question. In addition, the administrator Hart testified that Mrs. Johnston, shortly after the death of her husband, had informed him that she had paid this consideration, and this testimony is supported by that given by Mrs. Johnston, who says that she did so tell the administrator Hart, and the latter states that thereupon he applied to counsel and was told that it was not his duty to attempt to set aside the Harris and Johnston assignments.

The referee thought, as is apparent, that the former decision, if these facts were supported, would not be applicable, because they are entirely different from those appearing upon the former appeal. The referee was not inclined to give much weight to the statement of Mrs. Johnston that she had loaned the $2,000, placing his decision upon the ground that the administrator was not liable, for the reason "that the counsel for the administrator advised him to bring no

action after Mrs. Johnston had declared that she paid value for the assignment." The learned surrogate seemed to think that little weight should be given to this conclusion, otherwise the report would have been in this as in other respects confirmed.

We think, however, that the conclusion reached by the referee might have been placed upon both grounds, and without referring again to the one upon which he placed his decision, which appears in his opinion, let us for a moment consider the effect of the testimony now presented upon the question of whether it was the duty of the administrators to bring suit, or whether or not the creditors could successfully assail Mrs. Johnston's statement that she was a purchaser for value.

Having regard to the price, viz., $1,500, at which she sold the interest to the administrator Hart, and the sale of the entire property for $6,300, as made in the partition suit, it must be assumed that $2,000 was full value for one-eighth interest in this leasehold, which she testifies she loaned to her husband, subsequently receiving the assignment. Assuming, nevertheless, that it was the duty of the administrator to sue, we think that if it can be shown that in such an action he could not have prevailed, in the light of all that now appears, it would be extending the liability of an administrator beyond that fixed by law to hold him responsible for not having brought a suit which he could not successfully maintain.

Had he brought such a suit he would have been met by testimony such as was produced before the referee in this case, of Mrs. Johnston asserting that she had loaned her husband $2,000, which was the consideration for the subsequent assignment to her of the leasehold interest. She testified to the sources from which she received this money and gave the date thereof. Her testimony is that she paid $2,000 in a check, which upon cross-examination she stated was obtained by mortgaging her house on Fourth or Park avenue to one Buchanan Winthrop for $8,000, and that out of this $8,000 the $2,000 was paid. Upon Mr. Winthrop's examination, it appeared that he had made a loan which was secured by the bond and mortgage of Mrs. Johnston and her husband upon her house, but that in payment thereof he gave one check to Edward S. Dakin, which money was undoubtedly paid subsequently to Mrs. Johnston, but in what checks or in what way does not appear. It does appear, how-

ever, from Mr. Winthrop's statement, that this payment was made on the 21st day of December, 1881. And by a book of Mrs. Johnston's husband it would appear that upon the same day he deposited in the Bank of the Métropolis the sum of $1,889.52, or almost $2,000. The fact, therefore, that the husband and wife on that day raised a mortgage, and the further fact appearing that the husband was insolvent, renders this deposit of the intestate to some extent confirmatory of the inference that could be drawn that this $1,889.52 was given to him by his wife.

However, without regarding this as conclusive evidence, we think it clearly appears that had this testimony been elicited in an action brought by the administrator against Mrs. Johnston to set aside the assignment to her, standing as it does upon the record uncontradicted, it could not have supported the burden of proof which would have been upon the plaintiff of showing that the assignment to Mrs. Johnson was without consideration, and, therefore, void as against creditors of her insolvent husband.

Upon this new testimony elicited and for reasons given, in addition to those assigned by the referee, we think that the modification made in the report of the referee in respect to this interest should be reversed, and that the referee's report as presented should be confirmed, and the interlocutory and final decrees of the surrogate in all other respects affirmed, without costs to either party upon this appeal.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Modification by surrogate in report of referee reversed and referee's report confirmed, and the interlocutory and final decrees of the surrogate in all other respects affirmed, without costs to either party upon this appeal.